UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
FERNANDO MORRISON, JR.,

                          Petitioner,

      -against-

JOSEPH T. SMITH,

                          Respondent.
------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

13 Civ. 6622 (CS)(JCM)

To the Honorable Cathy Seibel, United States District Judge:

Petitioner Fernando Morrison, Jr. ("Petitioner"), proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 dated September 12, 2013 (the "Petition").[1] (Docket No. 1). Respondent Joseph T. Smith ("Respondent") opposed the Petition by affidavits filed on November 6, 2013 and a memorandum of law dated November 20, 2013. (Docket Nos. 8, 9, 14). Petitioner replied by traverse dated March 6, 2014. (Docket No. 19). For the reasons set forth below, I respectfully recommend that the Petition be denied in its entirety.

## I. BACKGROUND

### A. The Crime and Indictment

Petitioner's convictions arise from an incident in which he stabbed Suzanne Stephenson ("Ms. Stephenson") and caused physical injury to his then-girlfriend, Marie Jean-Pierre ("Ms. Jean-Pierre"). Construing the evidence in the light most favorable to the State, *see, e.g., Murden v. Artuz*, 497 F.3d 178, 184 (2d Cir. 2007), the following facts were established at trial.

---

[1] A *pro se* prisoner's papers are deemed filed at the time he or she delivers them to prison authorities for forwarding to the court clerk. *Houston v. Lack*, 487 U.S. 266, 276 (1988); *see also Walker v. Jastremski*, 430 F.3d 560 (2d Cir. 2005) (analyzing the *Houston* "prison mailbox rule"). Petitioner certified that he delivered his original Petition to prison authorities for mailing on September 12, 2013. (Docket No. 1-1 at 21). Unless otherwise noted, the Court adopts Petitioner's dates for this filing and for all other filings discussed herein.

-1-

In March 2009, Petitioner was at the home of his girlfriend, Ms. Jean-Pierre, in Poughkeepsie, New York. (Tr.[2] at 401-402). After a verbal altercation, Petitioner put his hands around Ms. Jean-Pierre's throat and began choking her. (*Id.* at 403). Ms. Jean-Pierre could not breathe and, as she begged Petitioner to stop, started feeling dizzy and believed she was going to lose consciousness. (*Id.* at 403-404). As he continued choking Ms. Jean-Pierre, Petitioner said, "remember the kids are here, I will kill you and I will kill the kids . . . ." (*Id.* at 403). Petitioner finally released Ms. Jean-Pierre, instructing her not to tell anyone what happened. (*Id.* at 404). Ms. Jean-Pierre could not talk and had pains in her throat and a scratch on the left side of her neck. (*Id.*).

That evening, Petitioner compelled Ms. Jean-Pierre to drive him to Ms. Stephenson's residence in New Paltz, New York. (Tr. at 405). They arrived at approximately 8:00 p.m. and, when Ms. Jean-Pierre and Ms. Stephenson were alone, Ms. Jean-Pierre told Ms. Stephenson that Petitioner had choked her. (*Id.* at 406, 409-410). She also showed Ms. Stephenson the bruise and swelling on her neck. (*Id.* at 409-410). Ms. Jean-Pierre then asked Ms. Stephenson to convince Petitioner to spend the night at Ms. Stephenson's home. (*Id.* at 410). Ms. Stephenson complied and, after Petitioner agreed to stay, Petitioner told Ms. Jean-Pierre to go home. (*Id.* at 410-411).

On the morning of April 3, 2009, Petitioner returned to Ms. Jean-Pierre's home and directed her to drive him back to Ms. Stephenson's residence. (Tr. at 412). Petitioner claimed he had property inside Ms. Stephenson's apartment and wanted to take it back. (*Id.* at 413-414). Upon their arrival, Petitioner instructed Ms. Jean-Pierre to go into the apartment and take Petitioner's suitcase and bag. (*Id.* at 414). Even though Ms. Stephenson was not home, Ms.

---

[2] Refers to the transcript of Petitioner's trial that commenced on April 20, 2010. The transcript citations herein refer to the pagination of the original transcript. All other citations reference the pagination assigned upon electronic filing.

Jean-Pierre went inside, took the requested items and returned to the car. (*Id.* at 414-415). At that point, Petitioner went inside the apartment for approximately twenty minutes. (*Id.* at 415-416). Ms. Jean-Pierre heard glass breaking, and Petitioner returned with a white envelope containing what he said were additional belongings. (*Id.* at 416). Ms. Jean-Pierre and Petitioner then drove back to Ms. Jean-Pierre's apartment, during which time Petitioner brandished two knives which he used to poke Ms. Jean-Pierre while commenting that he hated Ms. Stephenson, his father, his sister, his wife and his mother. (*Id.* at 417-419). Later, Petitioner instructed Ms. Jean-Pierre to call Ms. Stephenson to inform her that Petitioner had taken her and her children's birth certificates and passports, the contents of the white envelope. (*Id.* at 430).

Thereafter, Ms. Stephenson arrived at the home of Ms. Jean-Pierre and, wanting to retrieve her possessions, went upstairs to the bedroom to speak with Petitioner. (Tr. at 433-435). Ms. Stephenson demanded her passport and began arguing with Petitioner. (*Id.* at 442). Petitioner then stabbed Ms. Stephenson in the stomach. (*Id.*). Hearing commotion, two of Ms. Jean-Pierre's children came into the bedroom and told Ms. Stephenson to run. (*Id.* at 445-446). Petitioner was holding two knives, and proceeded to chase Ms. Stephenson to her car. (*Id.* at 446). Ms. Jean-Pierre, who was in the bedroom as well, testified that she was not armed with a knife in her bedroom, did not threaten to kill Petitioner, and did not conspire with Ms. Stephenson to kill Petitioner. (*Id.* at 451-452). Ms. Stephenson got in her car, at which point Petitioner made thrusting movements with his knives toward the tires and yelled, "I'm going to kill you, bitch. You say you are going to leave me." (*Id.* at 448). Ms. Stephenson backed out of the driveway and drove away. (*Id.* at 448-449).

After the incident, Ms. Jean-Pierre called the police and told them that someone was in her backyard. (Tr. at 449). She did not mention the stabbing because she was afraid. (*Id.*). Later,

Petitioner contacted Ms. Jean-Pierre and told her that the police could not catch him and that she should tell Ms. Stephenson to be careful. (*Id.* at 450). On April 4, 2009, Ms. Jean-Pierre phoned the police to report that Petitioner was calling and threatening her. (*Id.*).

By Dutchess County Indictment Number 114/09, Petitioner was charged with: (i) one count of violent felony assault in the first degree; (ii) one count of misdemeanor criminal mischief in the fourth degree; (iii) one count of misdemeanor assault in the third degree; and (iv) one count of felony stalking in the second degree. (Docket No. 8-2).

## B. Trial, Verdict and Sentencing

On April 20, 2010, Petitioner's jury trial commenced before the Honorable Thomas J. Dolan of the Dutchess County Court ("Judge Dolan"). On April 29, 2010, the jury convicted Petitioner of: (i) assault in the first degree; (ii) criminal mischief in the fourth degree; and (iii) stalking in the second degree. (Tr. at 798-802). The jury found Petitioner not guilty on the count of assault in the third degree. (*Id.*).

On June 4, 2010, the court sentenced Petitioner as a second felony offender to a determinate term of seventeen years with five years post-release supervision on the assault count; an indeterminate term of one to three years on the stalking count; and a definite term of one year on the misdemeanor count. (Sentencing Tr.[3] at 15-19). The court ordered that the assault and mischief sentences were to run concurrently, and the stalking sentence consecutively. (*Id.*). In imposing the sentence, Judge Dolan stated that "[i]t is the intention of the court that [Petitioner] serve 18 years in state prison, as a minimum, plus five years of post-release supervision." (*Id.* at 16).

---

[3] Refers to the transcript of Petitioner's sentencing hearing on June 4, 2010.

## C. Direct Appeal

Petitioner filed a timely notice of appeal from his judgment. On direct appeal, Petitioner raised the following grounds: (i) premature deliberations on the merits of the issue of justification denied Petitioner a fair trial under the Fourteenth and Sixth Amendments; (ii) proof of the count of assault in the first degree was against the weight of the evidence; and (iii) Petitioner's sentence was excessive. (Docket No. 8-10). By order dated April 10, 2012, the New York State Supreme Court, Appellate Division (the "Appellate Division") affirmed Petitioner's conviction. (Docket No. 9-3).

Petitioner then made an oral application for leave to appeal to the New York State Court of Appeals (the "Court of Appeals") and subsequently filed a letter application for leave to appeal. (Docket No. 9-4). By order dated July 6, 2012, the Court of Appeals denied Petitioner's application for leave to appeal. (Docket No. 9-5).

## D. Federal Habeas Corpus Proceedings

Petitioner timely filed the instant *pro se* Petition on September 12, 2013, raising the same three grounds he raised on direct appeal: (i) premature deliberations on the merits of the issue of justification denied Petitioner a fair trial; (ii) proof of the count of assault in the first degree was against the weight of the evidence; and (iii) Petitioner's sentence was excessive. (Docket No. 1).

## II. APPLICABLE LAW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). "Before a federal district court may review the merits of a state court criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural

requirements set forth in 28 U.S.C. §§ 2244 and 2254." *Visich v. Walsh*, No. 10 Civ. 4160 (ER)(PED), 2013 WL 3388953, at *9 (S.D.N.Y. July 3, 2013).[4] The procedural and substantive standards are summarized below.

## A. Timeliness Requirement

Federal habeas corpus petitions are subject to AEDPA's strict, one-year statute of limitations. 28 U.S.C. § 2244(d)(1). The statute allows for four different potential starting points to determine the limitations period and states that the latest of these shall apply. As the statute explains:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). However, this one-year period will be tolled during the pendency of a properly filed application for post-conviction relief. 28 U.S.C. § 2244(d)(2). This period may also be subject to equitable tolling, but "only in the rare and exceptional

---

[4] In accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) and Local Rule 7.2 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, a copy of this case and other cases, *infra*, that are unpublished or only available by electronic database, accompany this Report and Recommendation and shall be simultaneously delivered to *pro se* Petitioner.

circumstance." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (quotation marks and citation omitted); *see also Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (setting forth a two-step analysis for equitable tolling).

**B. Exhaustion as a Procedural Bar**

A habeas petition may not be granted unless the petitioner has exhausted his claims in state court. *See* 28 U.S.C. § 2254(b). As the statute prescribes:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that-
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)(i) there is an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> . . .
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b)-(c).

Exhaustion requires a prisoner to have "fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts." *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (citation omitted). If a petitioner "cites to specific provisions of the U.S. Constitution in his state court brief, the petitioner has fairly presented his constitutional claim to the state court." *Davis v. Strack*, 270 F.3d 111, 122 (2d Cir. 2001); *see also Reid v. Senkowski*, 961 F.2d 374, 376 (2d Cir. 1992) (even "a minimal reference to the Fourteenth Amendment" presents a federal constitutional claim to the state courts). However, a

petitioner may fairly present his claim even without citing to the U.S. Constitution. As the Second Circuit has stated:

> the ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye v. Attorney Gen. of State of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982). Fair presentation includes petitioning for discretionary review in the state's highest appellate court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 839-40 (1999) ("a state prisoner must present his claims to a state supreme court in a petition for discretionary review in order to satisfy the exhaustion requirement").

However, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997) (citation omitted). In such cases, although the claim is technically unexhausted, the district court may deem the claim to be exhausted but procedurally barred from habeas review. *See id.* at 140 ("a claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'") (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 (1991)).

Under New York law, defendants are permitted only "one direct appeal." *Lowman v. New York*, No. 09 Civ. 0058T, 2011 WL 90996, at *9 (W.D.N.Y. Jan. 11, 2011) (citing N.Y. Ct. R. §

500.20[5]); *see also Roa v. Portuondo*, 548 F. Supp. 2d 56, 78 (S.D.N.Y. 2008) ("Any attempt to raise these claims at this stage as part of a direct appeal would be rejected because a criminal defendant is entitled to only one direct appeal and one application for leave to appeal to the Court of Appeals."). Petitioners must raise record-based claims by direct appeal rather than by a collateral motion in state court. *See, e.g., O'Kane v. Kirkpatrick*, No. 09 Civ. 05167 (HB)(THK), 2011 WL 3809945, at *7 (S.D.N.Y. Feb. 15, 2011) ("all claims that are record-based must be raised in a direct appeal. . . . It is only when a defendant's claim hinges upon facts outside the trial record, that he may collaterally attack his conviction by bringing a claim under CPL § 440.10."), *report and recommendation adopted*, No. 09 Civ. 05167 (HB)(THK), 2011 WL 3918158 (S.D.N.Y. Aug. 25, 2011); *Lowman*, 2011 WL 90996, at *9 ("Collateral review of this claim—by way of another CPL § 440 motion—is also barred because the claim is a matter of record that could have been raised on direct appeal, but unjustifiably was not.") (citing N.Y. C.P.L. § 440.10(2)(c)[6]).

To avoid the procedural default of an unexhausted claim, a petitioner may show "cause for the default and prejudice, or that failure to consider the claim will result in miscarriage of justice, *i.e.*, the petitioner is actually innocent." *Sweet v. Bennett*, 353 F.3d 135, 141 (2d Cir. 2003) (citations omitted).

---

[5] This rule states, in relevant part, that a letter application for leave to appeal "shall indicate . . . (2) that no application for the same relief has been addressed to a justice of the Appellate Division, as *only one application is available*." N.Y. Ct. R. 500.20(a) (emphasis added).

[6] N.Y. C.P.L. § 440.10(2)(c) states, in relevant part, that a court must deny a § 440.10 motion to vacate judgment when "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him."

## C. Adequate and Independent State Grounds as a Procedural Bar

As the Second Circuit has instructed, federal courts "will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." *Kozlowski v. Hulihan*, 511 F. App'x 21, 23 (2d Cir. 2013) (summary order) (citations omitted). This preclusion applies even if the state court alternatively rules on the merits of the federal claim, so long as there is an adequate and independent state ground that would bar the claim in state court. *See, e.g., Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999).

A state ground is "independent" if it "'fairly appears' to rest primarily on state law." *Taylor v. Connelly*, 18 F. Supp. 3d 242, 253 (E.D.N.Y. 2014) (quoting *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006)). In the normal case, a ground is "adequate only if it is based on a rule that is firmly established and regularly followed by the state in question." *Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir. 2003) (citation omitted). A decision that a state procedural rule is inadequate should not be made "lightly or without clear support in state law." *Garcia*, 188 F.3d at 77 (citation omitted). However, "there are 'exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question.'" *Cotto*, 331 F.3d at 240 (citation omitted). In determining whether a case is "exceptional" in that the state ground should be held inadequate, the Second Circuit uses the following factors as "guideposts":

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had substantially complied with the rule given the realities of trial, and, therefore,

whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Id.* (quotation marks and citation omitted).

To avoid a procedural default based on independent and adequate state grounds, a petitioner may "show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" *Harris*, 489 U.S. at 262 (citations omitted).

**D. AEDPA Standard of Review**

When a federal court reaches the merits of a habeas petition, AEDPA prescribes a "highly deferential" standard for reviewing state court rulings. *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Fischer v. Smith*, 780 F.3d 556, 561 (2d Cir. 2015) (quoting *Richter*, 562 U.S. at 98). An application for a writ of habeas corpus:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

Courts have interpreted the phrase "adjudicated on the merits" in AEDPA as meaning that a state court "(1) dispose[d] of the claim 'on the merits,' and (2) reduce[d] its disposition to judgment." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001). Courts examine the "last reasoned decision" by the state courts in determining whether a federal claim was adjudicated on the merits. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) (noting the presumption that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders

upholding that judgment or rejecting the same claim rest upon the same ground."). "[W]hen a state court issues an order that summarily rejects without discussion *all* the claims raised by a defendant, including a federal claim that the defendant subsequently presses in a federal habeas proceeding, the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits." *Johnson v. Williams*, 133 S. Ct. 1088, 1091 (2013) (citing *Richter*, 562 U.S. at 86) (emphasis in original). The same presumption applies when "a state court rules against the defendant and issues an opinion that addresses some issues but does not expressly address the federal claim in question." *Id.* This "presumption is a strong one that may be rebutted only in unusual circumstances." *Id.* at 1096.

If a state court adjudicates a federal claim on the merits, the Court must apply AEDPA deference to that state court ruling.[7] 28 U.S.C. § 2254(d)(1)-(2). In the context of AEDPA deference, the phrase "clearly established Federal law" means "the holdings, as opposed to the dicta, of [the Supreme Court of the United States'] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 365 (2000). "A state court decision is contrary to such clearly established federal law if it applies a rule that contradicts the governing law set forth in the Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from its precedent." *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015) (quotation marks and citations omitted).

A state court decision involves an "unreasonable application" of Supreme Court precedent if: (1) "the state court identifies the correct governing legal rule from [Supreme Court]

---

[7] If, by contrast, a state court does not adjudicate a federal claim on the merits, "AEDPA deference is not required . . . [and] conclusions of law and mixed findings of fact and conclusions of law are reviewed de novo." *DeBerry v. Portuondo*, 403 F.3d 57, 66-67 (2d Cir. 2005) (citations omitted).

cases but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. For a federal court to find a state court's application of Supreme Court precedent unreasonable, the state court's decision must have been more than "incorrect or erroneous" -- it must have been "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). In other words, a state court's decision "that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (citation omitted). However, "the trial court's decision need not teeter on 'judicial incompetence' to warrant relief under § 2254(d)." *Alvarez v. Ercole*, 763 F.3d 223, 229 (2d Cir. 2014) (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). If a state court decision does not contain reasons for the dismissal of a defendant's federal claim, the Court must consider "'what arguments or theories . . . could have supported[] the state court's decision,' and may grant habeas only if 'fairminded jurists could [not] disagree that those arguments or theories are inconsistent with the holding in a prior decision of' the Supreme Court." *Lynch v. Superintendent Dolce*, 789 F.3d 303, 311 (2d Cir. 2015) (alterations in original) (citation omitted).

## III. DISCUSSION

### A. Premature Jury Deliberations

Petitioner first argues that improper premature deliberations deprived him of his right to a fair trial. (Petition at 5). Respondent contends that because the Appellate Division's decision on this claim, which Petitioner raised in his direct appeal, was neither contrary to nor an

unreasonable application of Supreme Court precedent, the claim should be dismissed.[8] (Docket No. 14 at 58-60). I agree with Respondent.

Because the state court rejected Petitioner's claim on the merits, AEDPA deference is applicable here. Petitioner must therefore demonstrate that the state court's decision was either contrary to, or an unreasonable application of, clearly established federal law. The Supreme Court has recognized that a determination of a trial judge concerning whether a juror may proceed with deliberations can only be overturned by a finding of "manifest error." *Patton v. Yount*, 467 U.S. 1025, 1031 (1984). Further, the trial judge's determination is entitled to special deference because that judge is in the best position to observe and assess the jurors and to make a credibility determination. *See id.* at 1038-1039; *see also United States v. Parker*, 903 F.2d 91, 100 (2d Cir. 1990).

Here, the Appellate Division found that, "after being alerted to comments made by a juror in the jury room before any evidence had been presented, the trial court, with approval of the defense counsel and the prosecutor, properly carried out a complete individual inquiry of each juror and alternate to ascertain the nature and extent of the comments." (Docket No. 9-3). It further found that the responses of the jurors and alternates confirmed that they had not made premature determinations as to Petitioner's guilt, nor had they assigned any burden of proof to Petitioner. (*Id.*). Indeed, this Court's review of the record makes clear that the trial court

---

[8] Respondent also argues that Petitioner's claim is barred from habeas review because Petitioner did not put the state court on notice of a violation of a federal constitutional right. (Docket No. 14 at 61). I disagree. In his direct appeal, Petitioner argued that the alleged premature deliberation was a "6th and 14th Amendment error" and cited to federal case law of constitutional dimension. (Docket No. 8-10 at 43-47). The Court finds that this was sufficient to put the state court on notice of a federal claim and, ultimately, to permit the instant habeas review. *See Anderson v. Reynolds*, No. 91 Civ. 2603, 1992 WL 47979, at *5-*6 (S.D.N.Y. March 3, 1992) (exhaustion requirement satisfied where petitioner made reference to the Fourteenth Amendment twice in his Appellate Division brief); *de la Cruz v. Kelly*, 648 F. Supp. 884, 886-888 (S.D.N.Y. 1986) ("[W]hile talismanic invocations of broad guarantees, such as those to "due process" or to a "fair trial," will not obviate the exhaustion requirement, references to the Fourteenth Amendment in the context of a specific description of the error alleged generally do fairly apprise the state court of the constitutional dimension of the alleged infirmity.").

conducted a thorough inquiry of the jurors and, based on its findings, reasonably concluded that there had not been premature jury deliberations. *Paccione v. New York*, 353 F. Supp. 2d 358, 368 (E.D.N.Y. 2005) (holding that the state court's decision to deny a premature jury deliberations claim was "fully supported by the record" and was therefore "not contrary to, or an unreasonable application of, federal law."). Thus, there was no "manifest error" that would require any higher court to overturn the trial judge's determination, especially given the special deference to which that determination is entitled.

Consequently, the state court decision denying Petitioner's premature jury deliberation argument was not contrary to, nor an unreasonable application of, Supreme Court precedent. Accordingly, I respectfully recommend that Petitioner's claim that he was deprived a fair trial on the basis of alleged premature jury deliberations be denied.

## B. Verdict Against the Weight of the Evidence

Petitioner's next argument is that the trial court verdict was against the weight of the evidence. (Petition at 7). As Respondent correctly contends, (Docket No. 14 at 67-74), this argument is not cognizable on habeas review.

A "weight of the evidence" claim is based on state law. *See Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) ("A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles."). As discussed *supra*, Section II.C., the Court cannot consider a purely state law claim on federal habeas review. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law . . ."); *Hatcher v. Heath*, No. 10 Civ. 782 (JG), 2011 WL 4710854, at *8 (E.D.N.Y. Oct. 4, 2011) ("The argument that the jury's verdict was contrary to the weight of the evidence, however, does not

raise a question of federal due process, and is not cognizable on a habeas petition."). While the Court recommends dismissal on this basis alone, the Court also finds that the jury verdict was not against the weight of the evidence. Accordingly, I respectfully recommend that this claim be denied.

**C. Excessive Sentence**

As his final ground for habeas relief, Petitioner claims that the trial court's sentence was excessive and should be reduced. (Petition at 8). Petitioner does not dispute that his sentence was with within the range prescribed by New York state statute. Respondent contends that this claim is not cognizable on habeas review and, furthermore, lacks merit. (Docket No. 14 at 75-79). I agree with Respondent.

As an initial matter, it is well settled that when a sentence is in accord with the range established by state statutory law there is no constitutional issue presented for habeas review. *See White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *see also Alfini v. Lord*, 245 F. Supp. 2d 493, 502 (E.D.N.Y. 2003) ("It is well settled that an excessive sentence claim may not be raised as grounds for habeas corpus relief if the sentence is within the range prescribed by state law.") (collecting cases); *McCalvin v. Senkowski*, 160 F. Supp. 2d 586, 589 (S.D.N.Y. 2001) ("Sentencing decisions are not cognizable on habeas corpus review unless the sentence imposed falls outside the range prescribed by state law.") (citation omitted); *Thomas v. Senkowski*, 968 F. Supp. 953, 956 (S.D.N.Y. 1997) (denying excessive sentence claim where the petitioner's sentence fell within the range prescribed by state law); *Mitchell v. Herbert*, No. 97 Civ. 5128, 1998 WL 186766, at *7 (S.D.N.Y. April 20, 1998); *United States v. Persico*, 853 F.2d 134, 138 (2d Cir. 1988) ("a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate" because "the decision of a

sentencing [court] is entitled to substantial deference."). Rather, a petitioner must show the trial court's sentencing decision amounted to an improper, "arbitrary or capricious abuse of discretion" that deprived the petitioner of his liberty. *Jones v. Hollins*, 884 F. Supp. 758, 761-62 (W.D.N.Y.), *aff'd*, 89 F.3d 826 (2d Cir. 1995).

In light of this standard, the trial court's sentencing was clearly an appropriate exercise of discretion and does not provide a ground for habeas review. *See United States v. Jaramillo-Montoya*, 834 F.2d 276, 279 (2d Cir. 1987). Petitioner's criminal record, (Sentencing Tr. at 13-15), the evidence presented, and the nature of the crime involved all support the trial court's decision. Thus, there are no extraordinary circumstances that warrant Petitioner's claim that his sentence is excessive and amounts to cruel and unusual punishment. Accordingly, I respectfully recommend that Petitioner's excessive sentence claim be denied.

## IV. CONCLUSION

For the foregoing reasons, I conclude and respectfully recommend that the Petition be denied in its entirety. Further, because reasonable jurists would not find it debatable that Petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 483-484 (2000).

## V. NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts, the parties shall have fourteen (14) days from the receipt of this Report and Recommendation to serve and file written objections. If copies of this Report and Recommendation are served upon the parties by mail, the parties shall have seventeen (17) days from receipt of the same to file and serve written objections. *See* Fed. R. Civ. P. 6(d). Objections and responses to objections, if any, shall be filed with the Clerk of the

Court, with extra copies delivered to the chambers of the Honorable Cathy Seibel and at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.

Requests for extensions of time to file objections must be made to the Honorable Cathy Seibel and not to the undersigned. Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be rendered. *See* 28 U.S.C. § 636(b)(1); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

Dated: May 10, 2017
       White Plains, New York

                              **RESPECTFULLY SUBMITTED,**

                              JUDITH C. McCARTHY
                              United States Magistrate Judge